We may be seated. This is our second case, Merritt v. State Police, 415-0661. For the appellant, Mr. Schmidt. For the appellee, Mr. Gaffney. You may proceed. Thank you very much. My name is John Schmidt. I'm an assistant attorney general. I represent the state police, its director, and the concealed carry licensing review board. We ask the court to answer the decisions of the board are subject to judicial review solely under the provisions of the administrative review law. And that's consistent with the plain language of Section 87B of the Act, which says all final administrative decisions of the department or the concealed carry licensing review board under this Act shall be subject to judicial review under the provisions of the administrative review law. The plaintiff relies upon language from Section 87A, but we believe that provides that when an application for a concealed carry license is denied, the aggrieved party may appeal to the director for a hearing upon the denial unless it was made by the board, in which case the party may the only way that the unsuccessful applicant could petition the circuit court would be by means of a complaint for administrative review in the circuit court. If that interpretation gives effect to both Sections 87A and B, the interpretation that the plaintiff suggests does not give effect to the plain language of Section 87B and is in fact utterly inconsistent with it because under the plaintiff's interpretation, you would never have administrative review of final administrative review. Counsel, under your interpretation of B, why would there even be an A? I don't see where A has any relevance whatsoever. You're right about how B should be interpreted. Your Honor, I'm sorry I interrupted. No, no, you're fine. Go ahead. I think 87A would still have some purpose. It tells the applicant that if it's a decision of the board and the applicant is challenging, the applicant goes to the director. If it's a decision of the board, the applicant goes to the circuit court for a hearing. Then B says if it's a decision of the board, then the circuit court reviews it solely under the administrative review law. So I think A still has some effect under our interpretation. And our interpretation certainly doesn't create a situation where it would be utterly inconsistent with a portion of A. Their interpretation is completely inconsistent with B and would completely nullify and negate B. Well, to me, when I look at the statute, it looks to me in A, they're saying if it's a department decision, you appeal to the director. If it's a concealed carry licensing review board, you don't have to take that extra step. You can go right to the circuit court. And then when you look at B, B says all final administrative decisions of the department or the concealed carry licensing review board are reviewed under the administrative review law. So to me, that's what A does. It tracks it, whether you're going through the department up to the director to get your final order or whether you're going to the concealed carry board. If the concealed carry board says you're not getting a license, you don't appeal that to the director of the department. You don't have to under the statute. I think that's right. Yes. What do you appeal under that circumstance? Don't you appeal the decision as notified by the director? And the director simply follows the recommendation of the board, but nothing happens until the state police notifies the applicant, correct? There can be no appeal until there's notice, right? That's correct, Your Honor. And the notice cannot occur until the board has notified the director that the person is ineligible. Is that right? Yes, that's absolutely right. Okay. So again, that leads me to the question, what does A mean then? Because that puts us right back into B, and therefore A is completely unneeded, superfluous. Well, I think it does. That suggests that the legislature must have meant something in A, otherwise B would have covered everything. But the director's not making the final decision when it's the concealed carry board. So although the director may end up giving the notice, he's not making the decision. Is that right, counsel, what Justice Polk just said? Yes, and it may help if I explain how this works. Okay, so then if that's correct, once the board makes the decision, that would be the end of the application process. But that's not correct, is it? That's not the end of the application process, because the board making the decision requires an additional step. And what is that additional step? It's a notice step. How does that notice occur? The board notifies the state police if it has found that the applicant would pose A. And what does that notice then trigger? It triggers a notice from the state police to the applicant. What does the notice from the state police to the applicant trigger? The right to challenge. Okay, is that the final decision then? We would say... Because there is no right to challenge until the notice is made by the state police, correct? That's absolutely... I mean, you gave that a minute ago. That is correct. So that's the final decision making, final decision made in the process. Well, we would say it's really the board's final decision, and all the state police is doing is notifying the applicant. Once the board makes its finding as to whether the applicant would pose A, as to whether the applicant would... If the applicant was given a concealed carry license. Once that finding is made, the state police has no discretion. They must deny. So we think the final administrative decision, the decision that settles the rights of the parties in this case, and that terminates the proceeding, is the board. You just said if the board made that decision and stopped right there and took no other step, that's not the end of the process. Well, it's the end of the decision making process, Your Honor, but the state police provides notice of the decision after the board makes it. Let me ask a question. Is there a means by which a concealed carry license is denied that does not involve the concealed carry licensing board? Absolutely, Your Honor, yes. Okay. This concealed carry licensing review board only becomes involved if a law enforcement agency objects to the application. If there is no law enforcement objection, the case does not go to the board at all. But then within the department, there is some inquiry or some determination is made that it's going to be granted or denied. Yes, that's right, Your Honor. And in that situation, if the department denies, Section 87A says that the applicant appeals to the director. But if it's a case before the board, if there was a law enforcement objection, and that's when it goes to the board, then the applicant must go to the circuit court. But under either, the administrative review law applies? Yes, under either. If it's a case that stays with the state police, then it goes to the director. The director's decision is then reviewed under the administrative review law. But if the case goes to the board, which again means there was a law enforcement agency objection, as there was here, then you don't go to the director of the state police. The applicant must go straight to the board. That suggests that the legislature intended something different to happen where an agency made an objection, correct? It may suggest that, Your Honor, but I don't imagine that the legislature could have intended something that would obliterate Section 87B. The legislature created the board in the statute, correct? Yes. Okay. So it seems like they intended something different to happen when they allowed an agency to object and then the board to hear. The objection in the board actually doesn't make a decision. It simply sustains or overrules the objection of the agency. Isn't that what the statute says? Well, Your Honor. Does the statute say that? I don't think so, no. I think Section 87A recognizes that the board makes final administrative decisions because it refers to all final administrative decisions of the department or the concealed carry licensing review board. So I think the legislature, they may not have framed this statute very well, but I think that language suggests that they regard the board as the final administrative decision maker when there is a law enforcement objection. Even though, as Your Honor is correctly pointing out, the state police does give actual notice of the decision. But again, I'll emphasize under Section 10F of the Act, once the board makes its determination, the state police has no alternative but to deny if the board determines that the applicant... or herself or others or is a threat to public safety, then the board shall affirm the objection of the law enforcement agency. Yes. Well, that's what I asked a minute ago. Yes, exactly. Well, that's what the board does. Right, right. And Section 87A indicates that the legislature considers that the final administrative decision because there's nothing else the board does. If that's true, then why doesn't the board just simply notify the applicant? I'm not sure why that is, Your Honor, but they let the General Assembly determine that the state police should issue the formal notice. Is this board considered an agency? Yes. How so? It's appointed by the governor, isn't it? Yes. Isn't the board appointed by the governor? Yes. So a board appointed by the governor is considered an agency? Yes, and there are other boards, too, that would be considered administrative agencies, boards and commissions that are appointed by the governor. The Human Rights Commission and the Property Tax Appeal Board would be two that I could think of. But again, Section 87B does refer to final administrative decisions of the Concealed Carry Licensing Review Board, and I think that suggests that the legislature would have considered them an agency, too. I think I said before that that language was in 87A, it's in 87B, so I apologize for that mistake. But again, if this is not considered a final administrative decision of the board, there's nothing else that they do that would be considered a final administrative decision. Plaintiff mentioned several other things that the board can do, but none of them effectively terminates the proceeding so that it would be considered a final administrative decision. Again, I know I'm being redundant, but it seems like to me what terminates the proceedings and allows for the process to go on for an appeal is the notification by the state police, presumably through the director, and not the so-called decision made by the board itself, because the board itself is then required to make a ruling on the objection and then inform the state police whether the applicant is eligible or ineligible. Is that right? Yes, that's right. Then that brings me full circle right back as if that's all correct, what's the purpose of Section A? Because we only need Section B. It's exactly the same thing, whether there's been an agency objection, whether there's been a ruling on the objection, whether it's gone through the hearing process and the director's rule against the applicant, it's all the same thing. It makes no difference whatsoever. The creation of the board is totally irrelevant under your theory. The objection from the agency is totally irrelevant under your theory for purposes of an appeal to the circuit court. It could be the legislature just messed it up. It's hard to believe they could do that. But it seems to me that your argument must lead to the conclusion that A means nothing because B controls everything. I think the one thing A does mean is that B doesn't, is that it tells applicants that if the decision was made solely by the Department of the State Police, if the board was out of it, if it's a non-law enforcement objection case, I think it tells you you go to the director first. But you have to go to the director whether the board's involved or not. Because the board's determination on the objection is not the final step. The final step is then to notify the State Police, again presumably through the director, and so it's the same thing. No, it's not the same thing, Your Honor, because in a case that only the State Police are involved in, the director actually reviews it. The director can overturn that if the director disagrees with the department's decision. In a case with the board, the director cannot overturn the board. But the director makes the final decision. No. Is that correct? Okay, the board makes the final decision. Yes, Your Honor, I believe that. But they're not done with the case. I think for all intents and purposes they are. They just, all you need is notice. And what's unusual, Your Honor, okay, you always need notice of a final administrative decision to trigger appealability. They're under Section 3103 of the Administrative Review Law. You always must have that notice. What Your Honor is absolutely right on, what's unusual here is you're bringing a different party in to give the notice. And Your Honor's right, that's unusual. Usually state agencies just do it themselves. They don't go to somebody else. But, you know, one reason I can think of why they might have had the State Police do it is State Police is just a much bigger agency with more resources than the board. Right, they're set up to do it. They're used to doing it. The director's decisions. This is a citizen board. Right, I think that may well be a part of it, Your Honor. But Your Honor's correct, that is an unusual circumstance. And I want to make it clear to myself again. We have two paths. The one path involves non-law enforcement agencies making an objection. Right. It could be a psychiatrist. Who could it be? The State Police are looking at it. And they put it in their database. But they get information. Whatever the information is. Whether it's from a law enforcement agency, but nobody's objecting. Or what information are they getting for the department to make a decision? They may get information that the complainant is ineligible. For example, an applicant's ineligible if they have a misdemeanor conviction within the past five years involving force or threat of force. Perhaps the applicant didn't list one on the application. The State Police finds out one is out there. So they may have their own. They deny the application. And in that case, the director of the department is making the final decision. That's correct, Your Honor. And again, the director could overturn it if the director finds that the department was wrong. So under administrative review law, that's the final decision. Yes, that's right. And you would distinguish that from the Concealed Carry Board, which is a citizen board appointed by the governor. They make the final decision. And then the director was only performing the ministerial function of forwarding that information. That's correct, Your Honor. And it would be the department that forwards the information. But yes. And that's just a ministerial function. And in both instances, would that information go into a database? The denials? Yeah. I believe that would, Your Honor. Okay. I believe that would, Your Honor. That's correct. And my time's up. Thank you. So there are no further questions. Thank you. Mr. Gaffney. Thank you. May it please the Court, Counsel. My name is John Gaffney, and I represent, along with Todd Roseberry, the athlete in this matter, Michael Merritt. I believe that any discussion in regards to the Firearms and Concealed Carry Act begins with, to paraphrase Thomas Jefferson, self-evident truth. Since the U.S. Supreme Court decision in Heller v. McDonald and the Seventh Circuit decision in Moore v. Madigan, it's undeniable that the right to keep and bear a firearm outside the home is a constitutionally protected right. And the Illinois Supreme Court has adopted that reasoning in its decision in People v. Aguilar. I believe it's also important to consider what was happening at the time that the legislature drafted the Concealed Carry of Firearms Act. The Seventh Circuit had just decided in Moore v. Madigan, striking down the last existing complete ban on the carry of firearms outside the home in the nation. And the legislature was drafting the Act, crafting the Act, to make sure that it would pass constitutional muster. And in doing so, they provided for safeguards within the Act to protect that important constitutional right. I think as your Honors have said during the State's argument, it's pretty clear that the Act itself, in general, is administerial. You apply, if you meet all the basic requirements, you get your permit. However, the Department of State Police is not given any discretion to deny or accept an application if you qualify under the Act. The only discretion in the entire Act that is given to anyone is given to the Concealed Carry Firearms Review Board. And in their discretion, they can deny an application by finding by a preponderance of the evidence that the applicant is a danger to himself or herself or to others. The legislature directly addressed how this exercise of discretion was to be reviewed. In Section 87A, it allows for review directly to the Circuit Court if and only if the Board finds that you're ineligible but upholds law enforcement objections. All other actions under the Act, including the administrative actions of the Board, are subject to the administrative review under the Administrative Review Act. So the legislature specifically provided... Wait a minute. What does B mean when it says all final administrative decisions of the Concealed Carry Board are subject to the Administrative Review Law? All of their decisions. It doesn't just say what you just said. I believe Section B deals with decisions that are made by the Concealed Carry Review Board that are administrative in nature. For instance, the Concealed Carry Review Board can ask for additional information. They can ask for the applicant to appear before them. Is that a final decision of the agency? How could that be appealed? I believe that when the ultimate decision is made to deny, that you could go back and appeal the administrative decision of the Board not to ask for certain things. You know, if the Board made a decision. B says final determinations. Final. Yes, Your Honor. All final. I believe the final determination would be when the state police denies the application at that point. No, no. This says all final administrative decisions of the Concealed Carry Licensing Review Board under this Act shall be subject to judicial review under the provisions of the Administrative Review Law. Yes, Your Honor. I don't see how it could be any clearer. I believe, Judge, that if you look at the Act itself and the discretion that is vested in the Concealed Carry Review Board, some of their actions are administrative and some of their actions are discretionary. And I believe that that's where the distinction is between the two sections of the Act. Because the only thing that you're allowed to appeal directly to the Circuit Court is the discretionary decision by the Board. What says that? Where are you reading that? I believe that is in Section 8. In Section 8? I believe in Section 8. I'm looking at Section 8 and I don't see it in there. Nothing says only discretionary decisions of the Concealed Carry Board go to the Circuit Court and ministerial decisions go to the Administrative Review Law. Nothing in there says that. I would argue to Your Honor that if you read the two in concert with one another, one specifically mentions administrative decisions and the one above it doesn't talk about administrative decisions. You have to read those two in concert with one another. I'm talking about A and B. A and B, yes. Reading those two. Yes. If you read those two in concert, then one section deals specifically with administrative decisions and the other section deals with non-administrative decisions. Well, 3101 of the Code of Civil Procedure defines what an administrative decision is. Yes, sir. And it's defined as any decision, order, or determination of any administrative agency rendered in a particular case which affects the legal rights, duties, or privileges of parties and which terminates the proceedings before the administrative agency. Yes, Your Honor. And isn't that what the decision of the Concealed Carry Board does? Actually, no, I don't believe it does, Your Honor. Why not? I think Justice Turner kind of picked up on the exact point. The Concealed Carry Review Licensing Board doesn't make the administrative decision. Why? They do not either uphold or deny the objection that is made by law enforcement, specifically under Section 6620, subsection D. They don't make the administrative decision. They simply decide whether or not to uphold or deny the objection by law enforcement and then the administrative decision is made by the State Police. No. The State Police have no discretion, as Mr. Schmidt has argued. Your Honor. They must uphold the decision of the Concealed Carry Board. And even in Section A, it talks about if the denial was made by the Concealed Carry Licensing Review Board, then you can petition the Circuit Court for review. You don't have to go to the Director. That's what A means. Respectfully, Your Honor, I would disagree on that because I think there's a larger scope. Well, I know that's your whole theory of your case. I know you disagree with me, but to me the statute is very clear on its face. Understood, Your Honor. And I think the problem is if you look at matters of a constitutional dimension, that's what I really think this case is about. Matters of a constitutional dimension are reviewed by the judicial branch. They're not reviewed by the executive branch. And I believe that this recognizes that the review of the exercise of a constitutional right is not an administrative function. The review of the exercise of a constitutional right is to be given the widest interpretation possible by the courts. And that, I believe, is the distinction. If you went to the Circuit Court on administrative review, the Circuit Court reads the record from the administrative hearing. What's the standard of review then? The standard of review, Judge, is clear in convincing evidence that the administrative agency made the wrong decision. I think the problem with that, Your Honor, is if you look at the way that the statute is drafted, the decision of the Administrative Review Board is effectively barred from any kind of meaningful review. Under Section 6620 subsection 8, the Board only reviews material that's submitted from law enforcement. They don't review material that's submitted from the applicant. In fact, the applicant has no right to submit material, has no right to even be present before the Board, and has no right to even know the nature of the objection that has been filed by law enforcement. After the decision is made, the decision of the Board is not subject to the Open Meeting Act. The decision of the Board is not subject to the Freedom of Information Act, specifically under Section 20H. And most importantly, Judge, I think this is critical, all the decisions in the material are confidential and exempt from inspection except by order of the Court, specifically under Section 20D. So, in essence, the Board's decision and the material that it relies upon are not part of the administrative record unless the Court allows it to be so. So, for instance, under the Administrative Review Law, the State files the record. If the State doesn't seek to get an order from the Court to see what the Board based its decision on, that is not part of the administrative record because you need a Court order to get that information. Counsel, you seem to be arguing that the applicant, after an objection is made, doesn't even have a right to present his or her position as to why the objection should be denied. Is that what you're saying? Yes. Because, and here's why I ask that. In the reply brief, I'm reading from page 9, within 15 days of receiving notice that a law enforcement objection appears to be sustainable, the applicant may submit any additional material that he or she wishes the Board to consider. The slide is 220, Bill Administrative Code, Section 2900.140, lowercase e1. That seems to contradict what you have just indicated to the Court, that the applicant doesn't even get to appear in front of the Board or argue as to why the Board should overrule the objection made by the agency. And your Honor is correct. It does appear to be contradictory, but what I'm quoting from comes directly from 430 ILCS 6620, subsection e. That section says that the only information that the Concealed Carry Licensing Review Board is allowed to review is information supplied by law enforcement, unless the Concealed Carry Licensing Review Board asks the applicant for more information. That comes directly out of the statute. Well, it appears to me that the Attorney General's argument in the reply brief is that the agency took a look at the language you just cited in the statute and adopted a rule as to how the statute is to be applied and that the rule adopted allows the applicant to appear and to submit materials. Am I wrong about that? To my knowledge, that's how it works. There's a statute adopted, the rules adopted goes through JCAR, and then the agency actually is able to utilize the statute by use of the rules that the agency adopted. And that's what is cited. Is that cite wrong? Does the administrative code provide as the Attorney General represents in the reply brief? No, Your Honor is correct in that it does provide for that. The problem is the administrative code can be amended at any time the administrative agency decides to do so. The only thing that we have that's set in stone is the statute. And the statute clearly says that they're only allowed to look at certain types of information. And I think that's part of the biggest problem with the way that the statute was designed is the information that the court is eventually going to get if it goes to administrative review is entirely controlled by the executive branch. They're the ones who determine what the Concealed Carry Licensing Review Board sees. They're the ones who determine what information eventually gets to the circuit court if you go under the rules of administrative review. Because, again, specifically under the statute, the decision and the materials that were looked at by the board are not part of the administrative record unless the court makes it so. On page 10 of the reply brief, the sentence at the top that I'm going to read for the record here is, in fact, unless the board denies a law enforcement objection outright, which of course would be favorable to the applicant, the applicant has an opportunity to be heard either through the submission of materials to the board or an in-person hearing. Your argument is that that's also incorrect. Well, I believe it is, Judge. If you look at the statute, the statute does not provide for an in-person hearing except at the discretion of the board. And the statute itself does not provide for the applicant to be able to provide materials to the board except at the discretion of the board. And I think that's the problem, Judge, is we have the executive branch controlling all the information that will eventually, if you go with the state's argument, that will eventually get to the judicial branch. And I think if you look at the constitutional dimension of what we're talking about here, that's a huge problem. And I think we need to remember that the statute was drafted at the time that the Seventh Circuit in Moore v. Madigan decided that there was a constitutionally protected right to bear firearms outside the home. It is a right of constitutional dimension which is traditionally left to the courts to determine. It is not traditional for the executive branch solely to determine how and when and where you can exercise a constitutional right. Normally, under the First Amendment, the Fourth Amendment, the Second Amendment, that goes to the judiciary. The judiciary gets to decide whether or not your exercise of that constitutional right is proper and correct. I looked and couldn't find any case in which it would be proper for an executive branch agency to determine whether or not you were allowed to exercise your constitutional rights. And I think that that is critical. That was what was going on at the time the legislature drafted Moore v. Madigan. They were in an atmosphere where the Seventh Circuit was going to have, in essence, what we call constitutional carry. You can carry a firearm outside the home for any reason because the rules were not in place. So they put those rules into place knowing that at some point it was going to get looked at by the Seventh Circuit, knowing at some point it was going to get looked at by justices such as yourselves to determine whether or not what the statute did comports with the constitutional right to carry a firearm outside the home. And I believe if you look at the state's interpretation, it essentially bars the applicant from any ability to present evidence to the concealed carry review board about his exercise of a recognized constitutional right. I believe that if you accept the state's interpretation, as Your Honor pointed out, subsection A becomes meaningless because it could have all been said in subsection B. So why even have subsection A if everything just goes through the administrative review board? What doesn't A set forth the procedure depending on whether the case is before the department or whether it's before the board? If it's before the department, when you get that decision, you must appeal to the director. You can't go right to the circuit court for administrative review. If the decision was of the board, then you don't appeal to the director. You go to court. But in both cases, B says, it's administrative review. It's not a de novo hearing. If you look at that section of the statute, looking at section B, and I understand where Your Honor is coming from, but what they do is they split out all final administrative decisions of the department or the concealed carry licensing review board under the statute shall be subject to judicial review under the provisions of the administrative review law. If you flip back to section A, it says specifically whenever the license is denied, the department fails to act, or whenever the license is revoked, the party may appeal to the director for a hearing upon the denial unless the denial was made by the concealed carry licensing review board, in which case the party can go directly to the circuit court. I understand where Your Honor is getting to, but I think if you interpret it that way, it makes section A entirely superfluous because it becomes subsumed by section B because basically section B says, and what Your Honor is saying, what it's spelling out is if the concealed carry review board denies it, you don't have to go to the director first. You can go right to the circuit court, I believe is Your Honor's interpretation. But I don't believe if you look at the statute, if you look at the way the rest of the statute is constructed, that that would allow the widest interpretation possible of the statute. The rules of statutory construction, in fact, the statute on statutes, 5 ILCS 70-1.01, it says all provisions of statute shall be construed liberally. And case law in both the Illinois Supreme Court and quorum, as well as in Lieberman and Knowles' decisions that we cite, say that statutes should be interpreted to promote their essential purposes and they're to be given the fullest rather than the narrowest possible interpretation. And the other thing that's important here is another rule of statutory construction is the specific controls over the general. There's a specific section of the statute that deals with appeals directly to the circuit court, and then the second part of the statute deals with, in general, where would you go if you have a denial. I believe when you apply the rules of statutory construction, that specific grant in section A controls over the more general grant in section B. And I agree with Your Honor, I don't believe that the statute is a model of draftsmanship, is perhaps the best way to put it. But if you apply the rules of statutory interpretation to try and give the statute its widest interpretation and its widest application, along with the recognition that the ability to carry a firearm outside of your home is a valid and protected constitutional right, I believe it leads to the interpretation of the statute, which would harmonize both sections, that if you're denied by the Concealed Carry Licensing Review Board, you have the ability to go to a circuit court directly. Part of your argument sort of glossed over the rule that Justice Turner made reference to, because you said, well, that rule could change. Well, if we give it a broad view, isn't the broad view that, yes, this is what the statute says, and this rule helps implement the statute so that it meets constitutional muster? I believe that could be a reasonable interpretation, Judge. Absolutely, and looking at it from that perspective. You want me to look at it from a different perspective? Of course I do. And I believe that to give the statute its widest interpretation, Judge, what you're saying is this is enabling the statute to be interpreted constitutionally. And I understand the argument. I think that's what we're supposed to do. Your Honor is correct. But the problem, Judge, is the statute itself, as it is drafted, if you take the plain meaning of the statute without reference to other issues, if you take the plain meaning of the statute and you give it its widest possible interpretation, then that interpretation would be that you are allowed to appeal directly to the circuit court. But if the department takes away this constitutional right, you only get judicial review under the Administrative Review Act. Exactly, Judge. And I think, Your Honor, it's hit the nail on the head. If the department takes away your constitutional right, that's not how this works. The executive branch has never been allowed to say, you can exercise this constitutional right, but not that one. That is a function of the judicial branch. And if you allow the department to say, yes, you have a constitutional right, but we're going to pass rules and regulations that impair your ability to exercise that constitutional right, that would be unconstitutional because the executive branch has never been in a position of saying what you can and cannot enforce as a constitutional right. And I believe Your Honor hits the nail on the head with that one. Except you're here talking about somebody, or you're here talking about the people that go before the Concealed Carry Board. Assuming they go before the board, yes, Judge. And again, remember, our interpretation of the statute, they have the right to do so. The only information that the Concealed Carry Review licensing board gets comes entirely from law enforcement. In fact, Your Honor had mentioned something during the state's argument, which I wanted to mention because you said, well, could a psychologist or someone else object if they believe that somebody else? Actually, under the statute, no, they couldn't. The only people that are allowed to object are law enforcement. Now, a psychologist can go to law enforcement and say we have these concerns, but the law enforcement officer is the only person who's allowed to object. So that would suggest that even though the statute hasn't been around all that long, that the department has never denied a concealed carry permit on the basis of information other than the objection of a law enforcement agency. In looking at the statute, I have to say Your Honor is correct. I don't think the department is allowed to because, again, the state... I didn't ask whether they were allowed to, which would be subject to a challenge. Mr. Schmidt has indicated that the department has the authority based on information it receives, information that is available to it, to deny a concealed carry permit and that it has nothing to do with the concealed carry board. He suggests that can happen and perhaps that it has happened. He did not make the assertion that it has, but do we have these two clear paths? That may not be important entirely to your argument, but it is important to us in understanding the statute. Certainly, Judge. And you're not willing to concede they do. Judge, I'll be honest with you. No, I'm not. Because Mr. Schmidt said, for example, if the department does a background check and finds felony convictions, they're not eligible to carry a gun. Certainly. And then the department can deny it based on information they have. I understand. And perhaps my interpretation of what Your Honor was asking is a little bit different. When you apply, you do a background check. Anything that shows up on that background check can be the basis for the administrative denial by the state police. Before it even gets to the concealed carry review board. Not before, it never would go to the concealed carry board. Right, exactly. And actually, the way it works, and to be honest, I've applied for a concealed carry permit myself. Wait a minute. You brought that up. Did you get one? I did, Judge. All right. The way the system works, Judge, is you upload your information to the system, and then they run a background check. And before the period for the law enforcement officer even opens to object, they can grant or deny, or I should say they can deny at that point, for one of the obvious reasons, a felony conviction, a domestic battery, something like that. Once it gets past that initial point, then it goes to the opening for 30 days for the law enforcement officers to make objections. If no one makes an objection within that 30 days, the state police is bound to give you your permit. Once that law enforcement objection is filed, then it goes to the concealed carry board to determine whether to uphold or deny the objection. But ultimately, the administrative decision goes back to the Department of State and Police. Are you eligible if you have just been almost immediately, a week before release, from a facility of the Department of Mental Health because you have been committed? Is that an eligibility issue? And I'm assuming that there's some flow of information that the state police would actually know that, which may not be the case. In effect, I know that it's not the case. But if I may, just a moment. Thank you. And I just want to make sure I was right on that point. It's an eligibility requirement. It's not a concealed carry requirement. And the answer would be that that is a thing that the state police can consider regarding eligibility. Yes, Your Honor. All right. Thank you. Thank you, Your Honor. Thank you for your time. Rebel? Just to make it clear, under the board's regulations, if the board determines as a preliminary matter that an objection appears to be from law enforcement, appears to be sustainable, it notifies the applicant, and then the applicant may submit any written materials. And they do that under the aegis of the rule that we're in reference to? Correct, Your Honor. Yes. Not under the aegis of the statute? Well, it's more of a rule. But I think the rule is at least the board, of course, has authority to promulgate rules. And the rule is consistent with the statute. The statute gives the board discretion to ask for extra information from the applicant. And the board has implemented a rule saying we're always going to do that. So the bottom line is this board does not make its decision whether to grant or overrule the objection based upon just the seven experts, but they consider materials submitted by the applicant and will allow the applicant to testify or present himself or herself to the board? And that, not necessarily, Your Honor. In all instances, they'll allow submission of written materials. But even under the rule, the in-person hearing is still discretionary. So I want to make that clear. That is still a discretionary rule. Okay. So when you use the expression in your brief opportunity to be heard, you're talking about through written submissions? Yes. Always? Always. And if the board allows it, in person as well? Yes. That's correct, Your Honor. And in terms of... Well, let me ask you, is that different than if the agency has not made an objection? Does the applicant have the opportunity at a regular, for lack of a better term, hearing, to present evidence himself or herself? Yes, I believe the way that works, Your Honor, with the state police is what they'll do. The director would first schedule an informal fact-finding conference and try to resolve it that way. And then the applicant can ask for an in-person hearing. Well, I ask that because that does make the procedure somewhat different than the procedure where the agency has made an objection. Because when it goes up, if administrative review is the only review, we could have a situation where the applicant has really not had a chance to argue on his or her behalf in person if the agency's made the objection and it's gone to the board versus the other mechanism where there was no objection. And that raises a flag, a red flag to me. Maybe that's what the legislature was trying to get at in Section A versus what it said in Section B. Well, my answer for that, Your Honor, would be certainly on administrative review, if the court on administrative review says, wait a minute, there should have been an in-person hearing in this situation, the court absolutely can say, the judge could absolutely say, I'm sending this back. There needs to be an in-person hearing. Okay. So if it went up on administrative review pursuant to the board's denial or approval of the objection, the court then could still say that there was a mistake made below because the person should have had the right to personally appear. Yes. That's correct. It would be reviewing the discretionary action of the board in not permitting someone to appear. Yes, that's right, Your Honor. But it could only have reviewed that if the applicant asked to appear. That's the only time it would have been using its discretion. Well, I'll say generally yes, Your Honor, but of course a court could always decide to ignore the waiver or the forfeiture rule and say, well, there is such a strong case that there should have been a hearing, we'll ignore forfeiture in this situation. But generally, yes, the applicant would have needed to ask to appear. And courts on administrative review can, you know, of course, address other constitutional issues too. And the one other thing I'd like to say before I sit down, the board regularly puts the materials it has into records on administrative review. And in our reply brief we discussed that. They're filed under seal. We don't believe that the statute was meant to say, the confidentiality requirements were meant to say, you know, you can't put them into an administrative record. They are regularly put in, but we file the records under seal to protect the confidentiality of the applicant. And filing records under seal is a well-established procedure in situations that involve confidentiality. Thank you, counsel. Thank you very much. We'll take the matter under advisement and await the readiness of the next case.